**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 MAR 22 P 4: 09

| | | |
|---|---|---|
| ENNIS E. THOMAS, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | CV 111-074 |
| v. | * | |
| | * | |
| STRANGE ENGINEERING, INC., | * | |
| | * | |
| Defendant. | * | |

CLERK
SO. DIST. OF GA.

---

**O R D E R**

---

Presently pending before the Court is Strange Engineering, Inc.'s ("Defendant") Motion to Dismiss or, in the Alternative, Motion to Transfer Venue.  (Doc. no. 9.)  After a review of the Complaint and the affidavits provided by the parties, Defendant's motion is **GRANTED** to the extent set forth below.

**I. BACKGROUND**

**A.    Factual Background**

This case arises from the destruction of Ennis Thomas' ("Plaintiff") drag racing vehicle.  Plaintiff is a professional drag racer, and Defendant is in the business of fabricating and assembling aftermarket automotive parts, including rear end assemblies.  (Compl. ¶¶ 1, 2.)

Plaintiff entered into a contract to purchase a Vehicle Rear End ("Rear End") welded and manufactured by Defendant. (Id. ¶ 4.)   Defendant advertises its rear end assemblies as "professionally welded" and states that it "has been the leader in driveline suspension for over 40 years by paying attention to detail."  (Id. ¶ 3.)   In deciding to purchase the Rear End, Plaintiff alleges that he relied upon Defendant's advertisements that suggested that Defendant was the foremost authority in building Rear Ends for drag racing vehicles.   (Id. ¶ 6.) Instead of contacting Defendant directly, Plaintiff ordered the Rear End from the Tennessee office of Power-Pro Racing Products ("Power-Pro").   (McGivern Aff. ¶ 12.)   Power-Pro is a distributor of aftermarket automotive parts marketed by numerous fabricators and assemblers.   (Id. ¶ 13.)   Upon receiving Plaintiff's request, Power-Pro contacted Defendant and ordered the Rear End.  (Id. ¶ 14.)

Defendant fabricated and assembled the Rear End at its facility in Morton Grove, Illinois and shipped the product to Power-Pro's Tennessee office.  (Id. ¶¶ 15, 16.)   While the Rear End was en route to Tennessee, Power-Pro requested that Defendant ship it directly to Plaintiff.   (Id. ¶ 17.)   As a result, Defendant contacted the shipping carrier and rerouted the Rear End to Plaintiff's place of business in Grovetown, Georgia.  (Id.; Compl. ¶ 10.)

Upon receiving the Rear End, Plaintiff attached it to his drag racing vehicle. (Compl. ¶ 11.) On February 6, 2010, Plaintiff traveled from his home in Georgia to attend a drag race in Florida. During the race, his vehicle crashed after the weld on the Rear End fractured. (Id. ¶ 12.) The accident caused Plaintiff substantial injuries and destroyed his vehicle. (Id. ¶ 14.) Plaintiff alleges that Defendant's negligent manufacture of the Rear End caused the accident. (Id. ¶ 13.)

### B.   Procedural Background

On April 1, 2011, Plaintiff brought a negligence action against Defendant in the Superior Court of Columbia County. (Id. ¶ 12.) In his Complaint, Plaintiff alleges that Defendant is subject to personal jurisdiction in Georgia by virtue of the Georgia long arm statute, O.C.G.A. § 9-10-91. Specifically, Plaintiff asserts that Defendant is subject to personal jurisdiction in Georgia because Defendant transacted business in Georgia, committed acts that resulted in a tortious injury to Plaintiff in Georgia, solicited business in Georgia, and derived substantial revenue from goods used in Georgia. (Id. ¶ 1.)

On May 20, 2011, Defendant removed the case to this Court on the basis of diversity jurisdiction. (Doc. no. 1.) Defendant subsequently filed the present motion to dismiss contending that this Court lacks personal jurisdiction. (Doc. no. 9.) In support of its motion to dismiss, Defendant

3

submitted the affidavit of its General Manager John McGivern. (Doc. no. 9, Ex. 3.)   This affidavit supports Defendant's argument that it does not have sufficient contacts with the state of Georgia to warrant the exercise of personal jurisdiction.

In opposition to Defendant's motion, Plaintiff submitted his own affidavit and the affidavit of David Turner, Chief Executive Officer for Turner's Automotive, Inc., a Georgia corporation that regularly orders parts from Defendant. According to Plaintiff, these affidavits demonstrate that Defendant is subject to personal jurisdiction in Georgia. Plaintiff also noted that no discovery had been conducted in the case and requested that this Court defer ruling on the motion to dismiss to allow the parties additional time to obtain affidavits and declarations.   (Doc. no. 14 at 1-2.)   This additional time would allow Plaintiff the opportunity to ascertain the full nature of Defendant's contacts with the state of Georgia and better respond to Defendant's argument that this Court is without jurisdiction.

After considering Defendant's request, the Court issued an Order permitting the parties to engage in limited jurisdictional discovery.   (Doc. no. 22.)   The parties were given forty-five (45) days from the date of the Order to file supplemental responses to Defendant's motion to dismiss.   (Doc. no. 22.)

Plaintiff, however, did not take advantage of the jurisdictional discovery and failed to supplement his response within the forty-five (45) day window.   Therefore, this Court will now address Defendant's motion to dismiss and consider only the parties' original briefs and affidavits.

## II. MOTION TO DISMISS STANDARD

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).   The plaintiff establishes a prima facie case by presenting "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. . ." Walker v. Nations Bank of Florida, 53 F.3d 1548, 1554 (11th Cir. 1995).   The facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted.   Foxworthy v. Custom Trees, Inc., 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995).   If, however, the defendant submits affidavits challenging the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d

1249, 1257 (11th Cir. 2010).   If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.   Id. (citing Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).

To determine whether a nonresident defendant is subject to personal jurisdiction in Georgia, the Court must perform a two-part analysis.   Id. at 1257-58.   First, the Court must decide whether the exercise of personal jurisdiction is proper under Georgia's long-arm statute.   Id.   Next, the Court must determine whether there are sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment.   Id.; Int'l Shoe Co. v. Washington Office of Unemployment Comp. & Placement, 326 U.S. 310 (1945).

The Eleventh Circuit has held that "the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process," but instead "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Diamond Crystal Brands, Inc., 593 F.3d at 1259.   "[C]ourts must apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that

both, separate prongs of the jurisdictional inquiry are satisfied." Id. at 1263.

### III. DISCUSSION

Defendant contends that this Court should dismiss this case pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because Defendant is not subject to personal jurisdiction in Georgia.   In support of this argument, Defendant contends that it does not maintain any offices in the state of Georgia and does not have any employees who reside in Georgia.  (McGivern Aff. ¶ 5.)  Moreover, Defendant asserts that it is not domesticated in or authorized to do business in Georgia and does not manufacture goods in Georgia.  (Id. ¶ 6.) Finally, Defendant contends that it does not regularly do or solicit business in Georgia and does not derive a substantial portion of its income from Georgia.[1]  (Id. ¶¶ 7, 8.)

Plaintiff, however, asserts that this Court has personal jurisdiction over Defendant pursuant to subsections (1), (2) and (3) of the Georgia long-arm statute.  Plaintiff argues that a number of factors support the exercise of personal jurisdiction over Defendant.  These factors include: (1) Defendant contracted with a Georgia resident, (2) Defendant advertises its products in catalogs that are distributed in Georgia, (3) Defendant

---

[1]    According to Defendant, only about 1% of its sales are made to Georgia residents.

7

attends drag races in Georgia and regularly promotes its products at these races, (4) Defendant maintains a facility in McDonough, Georgia, and (5) Plaintiff incurred medical expenses in Georgia.[2] Moreover, Plaintiff claims that exercising personal jurisdiction over Defendant comports with the due process requirements of the United States Constitution.

### A.  Personal Jurisdiction Pursuant to the Georgia Long-Arm Statute

As noted above, to determine whether it can exercise personal jurisdiction, the Court must first examine whether the exercise of personal jurisdiction is proper under Georgia's long-arm statute.

#### 1.  Subsections (2) and (3) of the Long-Arm Statute

Plaintiff asserts that this Court has personal jurisdiction over Defendant pursuant to subsections (2) and (3) of the

---

[2] Plaintiff also argues that Defendant garners substantial revenue from the sale of its products to Georgia residents. In support of this argument, Plaintiff employs a self-created "formula" for calculating Defendant's revenue from sales to Georgia residents. Specifically, using this "formula," Plaintiff asserts that "based on the fact that Georgia is the ninth (9th) most populated state; that Georgia's population is 9,687,663 or over 3% of the total population of the United States; and based upon the popularity of racing of all types in Georgia, [Plaintiff] believes that [Defendant] has more than sufficient contacts with the state of Georgia" to support the exercise of personal jurisdiction. (Thomas Aff. ¶ 8.)

The Court did not utilize Plaintiff's "formula" when considering Defendant's contacts with the state because the "formula" is based solely on conjecture. Plaintiff failed to present any evidence substantiating his calculations. Moreover, Plaintiff relied on his "formula" because "without discovery, he [could not] say with certainty . . . what percentage of [Defendant's] sales occur with residents of Georgia." (Id.) If Plaintiff believed that a substantial amount of Defendant's sales came from Georgia residents, he was free to explore that assertion by conducting jurisdictional discovery. Because he failed to take advantage of the limited discovery period or supplement his briefs, the Court is unwilling to consider his unsubstantiated "formula" when determining whether Defendant derived substantial revenue from the state of Georgia.

Georgia long-arm statute.  Under subsection (2), a nonresident defendant is subject to personal jurisdiction in Georgia if it "commits a tortious act or omission within this state." O.C.G.A. § 9-10-91(2).  Plaintiff suggests that because the Rear End was defective when shipped to Georgia, the act occurred in Georgia.  The Court does not agree.  The clear language of subsection (2) requires that the nonresident defendant commit a tortious act *in the state of Georgia*.  O.C.G.A. § 9-10-91(2).  A tortious act occurs "where the allegedly negligent act or omission was made . . . ." Atlanta Propeller Svc., Inc. v. Hoffman GMBH & Co. KG, 191 Ga. App. 529, 530 (1989); See also Gust v. Flint, 257 Ga. 129, 130 (1987) (reinstating the difference between subsections (2) and (3) established by the literal language of the long-arm statute).  Here, the alleged negligent act occurred in Illinois where the Rear End was manufactured.  Therefore, shipping a defective product to Georgia is not a sufficient basis for personal jurisdiction under subsection (2).

Plaintiff also contends that personal jurisdiction is proper under subsection (3) of the long-arm statute.  Pursuant to subsection (3), personal jurisdiction exists if the defendant "commits a tortious injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of

conduct . . . in this state." O.C.G.A. § 9-10-91(3). In support of his claim that subsection (3) applies, Plaintiff sets forth numerous factors to establish that Defendant engaged in a persistent course of conduct in Georgia. The Court, however, need not address these factors because Defendant did not commit a tortious injury in Georgia, and therefore subsection (3) is inapplicable.

Plaintiff contends that the injury occurred in Georgia because he underwent medical treatment in the state following his accident and therefore suffered an economic injury in Georgia. This argument is without merit. The Georgia Court of Appeals has held that a tort occurs where the actual injury takes place and not where the economic consequences of the injury arise. Gee, 259 Ga. App. at 897 (citing Atlanta Propeller Svc., Inc, 191 Ga. App. at 530); see also Turley v. Vaudeville Café, LLC, No. 1:10-cv-2284, 2011 WL 3844361, at *2 (N.D. Ga. Aug. 26, 2011) (holding no personal jurisdiction in Georgia because plaintiff was served contaminated food in Tennessee and only suffered economic consequences in Georgia). Thus, suffering economic consequences in Georgia is insufficient for purposes of subsection (3).

### 2. Subsection (1) of the Long-Arm Statute

Plaintiff also contends that jurisdiction is proper under subsection (1) of the long-arm statute because Defendant

10

transacted business in the state.  The Georgia long-arm statute,
O.C.G.A. § 9-19-91, provides in relevant part:

> A court of this state may exercise personal
> jurisdiction over any nonresident or his or her
> executor or administrator, as to a cause of action
> arising from any of the acts, omissions, ownership,
> use, or possession enumerated in this Code section, in
> the same manner as if he were a resident of this
> state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state.

O.C.G.A. § 9-19-91(1).  To meet the "transacts any business"
prong of the Georgia long-arm statute, a nonresident defendant
must purposefully do some act or consummate some transaction in
Georgia.  Diamond Crystal Brands, Inc., 593 F.3d at 1260 (citing
Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 517 (2006)).

Based on the record before the Court, it is clear that,
under a literal interpretation of the long-arm statute,
Defendant transacted business in Georgia.  Defendant shipped a
product to Georgia and derived revenue from the sale of that
product.  Nothing in subsection (1) of the long-arm statute
"requires the physical presence of the nonresident in Georgia or
minimizes the import of a nonresident's intangible contacts with
the State."  Innovative Clinical & Consulting Servs., LLC. V.
First Nat'l Bank of Ames, 279 Ga. 672, 673-75 (2005).
Therefore, while Defendant lacks a physical presence in Georgia,
its intangible contacts are sufficient to satisfy the
requirements of § 9-10-91(1).

## B.  Constitutional Requirements

Having found that Georgia's long-arm statute permits the exercise of personal jurisdiction, the Court must now address the due process component of the jurisdictional analysis. "The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns." Diamond Crystal Brands, 593 F.3d at 1267. Due process requires that (1) a nonresident defendant has certain minimum contacts with the forum state and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." Id.

To satisfy the minimum contacts analysis, Plaintiff must demonstrate that Defendant "purposefully availed" itself to the protection and laws of the state of Georgia, such that it "should reasonably anticipate being haled into court" here. Id. At the heart of the inquiry is the notion of "fair warning." Id. The fair warning requirement is met when a nonresident defendant "deliberately engage[s] in significant activities within [the forum] state or create[s] continuing obligations with residents of the forum." Id. at 1268 (citing Burger King Corp v. Rudzewicz, 471 U.S. 462, 480 (1985)). Put differently, Defendant must purposefully establish contacts with the forum state, and there must be a significant nexus between those contacts and the litigation. Id. at 1267.

Here, Defendant is a foreign corporation that is not licensed to do business in Georgia and does not have offices or employees in Georgia. Although Defendant sold a Rear End to a Georgia resident, this transaction, without more, is insufficient to satisfy the due process requirements. In Diamond Crystal Brands, the Eleventh Circuit noted that entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test. See also Burger King, 471 U.S. at 478-79. Instead, when inspecting the contractual relationship for minimum contacts, courts must focus on the substance of the transaction including prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing. Id. The focus must be on whether the nonresident defendant engaged in significant activities within a state or created continuing obligations with residents of the forum. Id. (citing Burger King, 471 U.S. at 480). This focus ensures that a defendant will not be subject to jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts. Burger King, 471 U.S. at 475 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984))

The sale of the Rear End appears to be an isolated transaction in the state of Georgia. Plaintiff failed to present any evidence suggesting that Defendant regularly contracts with Georgia residents. In fact, based on the

13

evidence before the Court, it does not appear that there were any direct negotiations or a history of other dealings between Plaintiff and Defendant.   Instead, Plaintiff ordered the Rear End from Power-Pro's offices in Tennessee, and Power-Pro contacted Defendant in Illinois.   This is not a case where Defendant reached out to a Georgia resident or had knowledge at the time of contracting that the product would reach Georgia. The only portion of the contract that involved the state of Georgia was the shipment of the product to Plaintiff's principal place of business in Grovetown, Georgia.   Shipment, however, cannot be the basis for personal jurisdiction. See Francosteel Corp. v. M/V Charm, Tiki, Mortensen & Lange, 19 F.3d 624, 628 (11th Cir. 1994) (finding that the only connection Defendant had to Georgia was delivery of cargo in Georgia which is not enough to establish personal jurisdiction) (overruled on other grounds); Baynes v. Mason Funeral Home, No. 1:07-cv-2805, 2008 WL 5191808, at *3 (N.D. Ga. Dec. 10, 2008) (holding that there was no specific jurisdiction based on the single contract which requirement shipment to Georgia).

Construing all justifiable inferences in favor of Plaintiff, aside from the sale of the Rear End to Plaintiff, the only contacts Defendant had with the state of Georgia were its advertisements and the fact that Defendant attended drag races

14

in Georgia.[3]   However, these contacts cited by Plaintiff are
exactly the type of "fortuitous" and "attenuated" contacts that
do not satisfy due process.   According to Plaintiff, "[c]atalogs
such as the Summit Catalog advertise the Defendant's parts and
those catalogs are sent to and utilized by Georgia residents."
(Doc. no. 14 at 2.)   Defendant presented evidence that while it
does  sell  some  products  to  Summit,  it  does  not  have  any
agreement with Summit regarding where its products are sold or
how its products are advertised.   (McGivern Supp. Aff. ¶¶ 3, 5.)
There  is  nothing  to  indicate  that  Defendant  pays  Summit  to
advertise  its  products  and  therefore  nothing  to  suggest  that
Defendant  purposefully  directs  its  advertisements  at  Georgia
residents or actively solicits sales within Georgia.

Additionally,  Defendant  admits  that  it  is  part  of  a
National  Hot  Rod  Association  ("NHRA")  contingency  program

_____

[3] Plaintiff claims Defendant maintains a facility in McDonough, Georgia.
Defendant, however, presented evidence that this facility is actually owned
by Autosales, Inc. d/b/a Summit Racing Equipment ("Summit"), an Ohio
corporation with its principal place of business in Ohio.   (Doc. no. 16, Ex.
A.)  Defendant has no ownership interest in Summit nor does Summit own any
interest in Defendant.   The only relationship between the two companies is
Summit's purchase of Defendant's products.   Plaintiff failed to present any
evidence to refute this claim.

Additionally, Plaintiff asserts that its engineering expert is located
in Columbia, South Carolina and that Defendant had its expert inspect the
vehicle in Columbia County, Georgia.   The fact that an engineer is located in
South Carolina is irrelevant to the inquiry of whether personal jurisdiction
is proper in Georgia.   Moreover, while Defendant's expert travelled to
Georgia to inspect the vehicle following the accident, the minimum contacts
analysis focuses on the relationship between Defendant and the forum state
prior to the event in question.   A subsequent inspection of the vehicle does
not support the assertion that Defendant engaged in significant activities
with the state of Georgia prior to the incident giving rise to the current
suit.

15

whereby it pays a racer a small contingency fee if the racer uses Defendant's parts, displays stickers indicating that the vehicle contains Defendant's parts, and wins a race. (Id. ¶ 9.) However, this is a nationwide program that is not Georgia specific, and the only knowledge Defendant has regarding whether its parts are used at races in Georgia comes after such use when Defendant is notified by the NHRA that fees are owed to the drivers. (Id.) Thus, like the advertisements in the Summit catalog, there is nothing to suggest that Defendant's participation in the contingency program was an effort to directly target Georgia residents. Furthermore, Plaintiff failed to present any evidence establishing a substantial nexus between Defendant's participation in the contingency program and the current lawsuit. As such, the advertisements and contingency program cannot be the basis of personal jurisdiction. See Butler v. Beer Across America, 83 F. Supp. 2d. 1261, 1267 (N.D. Ala. 2000) (finding that defendant's advertisements did not specifically target Alabama residents and therefore were not a basis for personal jurisdiction); Baynes, 2008 WL 519808, at *3 (finding that business did not advertise in Georgia for the purpose of personal jurisdiction when its name appeared in national funeral home directories).

Moreover, Plaintiff cannot rely on Defendant's attendance at Georgia drag races to establish personal jurisdiction.

Plaintiff stated that Defendant "has it trailers or personnel present at various races in the State of Georgia . . . marketing its products." (Thomas Aff. ¶ 6.) However, Defendant rebutted Plaintiff's broad assertion with evidence that in the last five years, Defendant only attended one racing event in the state of Georgia, which occurred in April of 2009. Attending this single race cannot amount to "significant activity" and thus does not provide the minimum contacts necessary to satisfy the due process requirements.[4] Additionally, Plaintiff failed to present evidence that he purchased the Rear End from Defendant at the 2009 race, or that he learned of Defendant's products at the race. Thus, even if this one race was enough to satisfy the minimum contacts analysis, there is no evidence to suggest a nexus between Defendant's attendance at the 2009 race and the current lawsuit.

In short, Plaintiff has failed to establish a prima facie case of personal jurisdiction over Defendant because Defendant's contacts with Georgia are too attenuated to satisfy the minimum contacts analysis. To exercise such jurisdiction would violate

---

[4] It appears from the affidavits before the Court that an employee of Defendant may have attended a Georgia drag race in April of 2011. To consider this contact would ignore the concept of specific jurisdiction and the clear mandate of Georgia's long-arm statute which require that the injury "arise out of" Defendant's contacts with the state. Because the injury occurred in the year prior to Defendant's attendance at the 2011 race, it cannot be said that the injury "arose out of" this contact.

17

Defendant's rights under the Due Process Clause of the Fourteenth Amendment.[5]

## C.    Transfer Venue

Defendant also requests a transfer of venue to the Middle District of Florida, the place where the accident occurred. Pursuant to 28 U.S.C. § 1406(a), even if the Court lacks personal jurisdiction, it may correct venue and jurisdictional defects through the transfer of venue. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) ("The language of 29 U.S.C. § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.")  Therefore, given the Court's lack of personal jurisdiction over Defendant

---

[5]   Plaintiff asserts that Diamond Crystal Brands supports his position that the Court has personal jurisdiction over Defendant. It does not.  In that case, the Eleventh Circuit found that Defendant established sufficient minimum contacts "when it purposely carried on a substantial and ongoing relationship with a Georgia manufacturer, specified delivery by 'customer pickup' in Savannah, and sent payments to Savannah of twelve or fourteen transactions." Id. at 1268.   The Eleventh Circuit further noted that "each individual transaction involved meaningful contact with Georgia, and, by purposefully engaging in fourteen transactions in just six months, [Defendant] established a substantial and ongoing relationship with a Georgia manufacturer." Id. at 1269.   Under the present facts, there is simply no similar evidence of a substantial and ongoing relationship necessary to establish personal jurisdiction.

Plaintiff also relies on the Georgia Court of Appeals decision in Aero Toy Store. However, the facts of that case are distinguishable from the present suit.  In that case, the court held that while the defendant did not have officers, employees, offices, or business affiliates in Georgia, and although it did not derive substantial revenue from Georgia, it regularly solicited business in Georgia through the internet.  Here, there is no evidence that Defendant solicited business in Georgia.  The only evidence of solicitation is the placement of Defendant's products in the Summit catalogs, which, as noted above, does not establish that Defendant actively sought out sales from Georgia residents.

and the fact that a substantial part of the events giving rise to the negligence claim occurred in another state, the case should be transferred to the United States District Court for the Middle District of Florida.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion (doc. no. 9) is **GRANTED**. The Clerk is **DIRECTED** to **TRANSFER** this action to the United States District Court for the Middle District of Florida and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia this _22nd_ day of March, 2012.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA